## Case No. 11,137.

### PIEHL v. BALCHEN.

[Olc. 24.] [1]

District Court, S. D. New York. Feb., 1844.

ADMIRALTY — FAILURE TO PRODUCE ARTICLES IN SUIT FOR WAGES — SUPPORT FOR AVERMENTS — DEVIATION — DESERTION — FORFEITURE — RECEIPT IN FULL — COMPENSATION FOR SHORT ALLOWANCE.

1. An avermen; in a libel by a seaman for wages, who has signed articles for a voyage from New-York to Pernambuco, thence to a port in Europe and back to the United States, is sufficiently supported, in case the master or owner does not produce the articles on trial, by proof that the agreement was. that the first terminus was some port in South America, not designated.

2. But an allegation that the voyage was continued from the port in Europe to the Cape de Verd Islands, to Rio Janeiro, to Monte Video and Buenos Ayres, does not render the after run of the vessel a part of the voyage agreed for in the articles; and unless assented to by the crew, will be a wrongful deviation, which discharges their obligation to the vessel.

3. A stipulation in writing for a series of voyages may be terminated or varied by mutual consent of the master and crew, and a new voyage be substituted by parol agreement.

4. But the desertion of the seaman during the second voyage cannot be made to enure to the master as a forfeiture of wages earned and due under the first one.

[Cited in The Pioneer, Case No. 11,177.]

5. A receipt signed by a seaman at the end of an eight months' voyage, acknowledging the payment of $9, in full of all demands against the ship, will not bar his suit for wages and short allowance, without proof of an adequate compensation actually paid him.

6. Quere. Whether proof of the handwriting of a subscribing witness to the said receipt, the witness being dead, is adequate evidence of its execution.

7. Compensation for short allowance is recovered as wages, and a general form of pleading is sufficient to admit evidence of the right, if not excepted to before trial.

8. Usually the sailor is required to prove no more than that a deficiency of provisions was served out, and the master can justify the short allowance only by proving the ship was furnished with a sufficient supply.

9. But if the seaman delays his action three or four years after the voyage is ended, the court will require him to give, also, at least proof constituting a reasonable presumption that the vessel went to sea unprovided with a proper supply of provisions.

10. If a seaman, sent on shore in the employment of the ship, neglects to return to his duty, the ship continuing at the port a sufficient time to give him opportunity to do so, the master in the mean time making inquiry for him, such voluntary absence will be a desertion and forfeit his wages.

[Cited in The John Martin, Case No. 7,357.]

The libel in this case was filed for the recovery of wages, including compensation for short allowance of provisions and water. The libellant [William Piehl] alleges that he shipped as an ordinary seaman, in New-York, on board the bark Caroline, of which the respondent

[1] [Reported by Edward R. Olcott, Esq.]

[George Balchen] was master, in the month of October, 1839, and signed articles for a voyage from New-York to Pernambuco, and thence to a port or ports in Europe and back to New-York, at the rate of ten dollars per month. He further alleges, that he performed the voyage to Pernambuco, and from thence to Hamburgh, between which two places he was put on short allowance of bread, water and salted provisions for forty-eight days, caused by the master's having sold the ship's provisions at Pernambuco. That the vessel then proceeded from Hamburgh to the Cape de Verd Islands, from thence with a cargo to Rio Janeiro, which was delivered there; thence with another cargo to Monte Video, which was there delivered; thence to Buenos Ayres with a cargo, which was delivered at the latter place. That he was sent ashore several miles from the ship by the master in a small boat, and was, by the violence of the seas, thrown out of it, and greatly injured, by being washed upon the rocks, and, as he imputes, was intentionally abandoned there by the master, where he was impressed into the naval service of the country; and .he further alleges in detail, great bodily sufferings and detentions, which prevented his return to New-York until the 25th of July last. The respondents say, in their answer, that "it is true," as is alleged in the libel, "that in the month of October, 1839, the barque, then in the port of New-York, and bound on a voyage thence to Pernambuco, and thence to one or more ports in Brazils, thence to Europe, Havana or the United States," shipped the libellant to serve as an ordinary seaman, for said voyage, at the rate of seven dollars per month wages, and admits that the voyage stated in the libel was performed by the libellant. But the answer denies all the allegations of short allowance, cruel treatment, &c., and alleges, in defence of the demand of wages by libellant, that he deserted from the vessel at Buenos Ayres, and thereby forfeited all wages earned previous to such desertion and after the vessel left Hamburgh; and that for the wages earned before the arrival at Hamburgh, he had paid him in full, for which he produced a receipt, dated at Hamburgn, June 29, 1840, for nine dollars, in full of all demands against the ship, and proved the handwriting of the subscribing witness to the receipt, who is now dead. Upon these issues the parties went to trial, September term, 1843, and on the 5th of October the court rendered a decision in favor of the libellant for wages, at the rate of $10 per month to the termination of the voyage at Hamburgh, and at the rate of $7 per month for the voyage from Hamburgh to Buenos Ayres, up to the time the libellant left the vessel at that port, and denied any compensation for short allowance. The parties moved for a rehearing of the cause. The motion was granted, and the cause was again argued in February term, 1844.

E. C. Benedict, for libellant.

N. D. Ellingwood, for respondent.

BETTS, District Judge. The libellant in this cause seeks to recover a balance due him for wages, and compensation by way of wages, for short allowance of provisions and water on the voyage. The shipping articles were not produced on the trial. Gelston, the shipping-broker, testified, that he shipped the libellant in October, 1839, on a voyage, at ten dollars per month, to go to South America, thence to Europe, and back to the United States, and for a time not exceeding two years. The agreement is not proved by the libellant as he alleges it, nor is it distinctly admitted by the answer; and the voyage actually performed was one variant from that described in the libel or answer, or by the broker who made the shipping contract with the libellant. But the voyage run comports sufficiently with the agreement proved to support the libellant's case, up to the arrival of the vessel at Hamburgh. After that, a new line of adventure was entered upon by the vessel, the libellant insisting on the trial that he continued on board under the terms of his first engagement; and the respondent, in his answer, did not allege there had been any change of voyage or agreement. It merely avers that the libellant was paid off in full discharge of his wages at Hamburgh. The answer also admits that the libellant continued to serve on board the vessel subsequently until her arrival at Buenos Ayres, and charges that the libellant deserted the vessel at Buenos Ayres, and thereby forfeited all claim to wages. The libellant does not, in his libel, assert any change of voyage or departure from his original shipping contract, at Hamburgh, nor does the answer set up a new engagement at Hamburgh, or abandonment of the old one there. The pleadings, if severally held to, would limit the controversy to the first voyage, which terminated at Hamburgh; there are no averments in the pleadings bringing the after voyage under these terms. But the proof is clear on both sides, that the libellant, after having left the bark at Hamburgh, reshipped at that port, and continued to serve on board to the arrival of the vessel at Buenos Ayres. Indeed, the main points to which the evidence and arguments in the cause were directed, relate to transactions at Buenos Ayres. There is no written evidence of the terms of the latter engagement, nor is there oral proof, direct or satisfactory, to that point; all that is alleged by the respondent to have been earned by the libellant relates to the amount of wages.

The respondent, upon this state of the pleadings, cannot avail himself of the fact, if sufficiently established by the proofs, that the libellant deserted the vessel at Hamburgh, and thus lost his claim to antecedent wages; nor can the libellant justify a subsequent desertion from the vessel at Buenos Ayres, upon the ground that she had deviated from the voyage for which he shipped at New-York. Because, it is manifest that if there had been cause of complaint on both sides that the shipping contract was violated,

the objections were adjusted or waived, on the termination of the voyage at Hamburgh, where a new contract and voyage were entered into by the parties. The points of contestation upon the issues, made by the pleadings, in relation to the first voyage, are the rate of wages to be paid, whether the libellant was put on short allowance on the voyage, and whether he abandoned the vessel at that port, and his claims were wholly paid and settled at Hamburgh; and in respect to his further continuance on the ship, whether he was to receive the same wages as under his first engagement, and whether he deserted the vessel at Buenos Ayres, and thereby forfeited all wages then unpaid him. The respondent does not produce the shipping articles, but insists that the libellant shipped at seven dollars per month wages. The proof is quite satisfactory that the agreed rate of wages at New-York was ten dollars per month, and that it was so expressed in the shipping articles. The respondent gave in evidence a receipt signed by the libellant, at Hamburgh, June 29, 1840, for nine dollars, in full, of his demand against the vessel. There is no proof of any payment made the libellant for the eight months he had then served on board, except his advance of $12. Even at the rate of $7 per month, the libellant had then earned fifty-six dollars, and no court would allow a bald receipt given by a sailor, for nine dollars, to extinguish a clear debt of $64, without proof of some further satisfaction, amounting to a real compensation to the seaman. Harden v. Gordon [Case No. 6,047]; Thomas v. Lane [Id. 13,902]; The Nimrod [Id. 10,267].

In cases where parties act upon equality of intelligence, and no foundation for suspicion of fraud or imposition is laid by proof, a receipt is no more than prima facie evidence of payment, and may be explained, contradicted or varied by parol proof; and in the case of seamen dealing with a master upon the consideration of a small advance of ready money, for the discharge of their wages, the courts will exact satisfactory proof that they have been justly compensated. It would be a glaring impropriety to allow this naked receipt to conclude the seaman, and bar his action, when the respondent only claims to have settled with him on the basis of paying at the rate of seven dollars per month, whilst the testimony is incontestable that the agreement was to pay him $10. There was, accordingly, earned at the time that receipt was obtained, $3 per month, for the period of service, above the sums claimed by the respondent, to have been credited and paid to the libellant. I do not advert to the questionable adequacy of the proof of the receipt to render it a reliable voucher against a claim of wages, only the handwriting of the subscribing witness being proved; because, in my opinion, the respondent is bound to give

other evidence of actual payment or satisfaction of the debt, and cannot extinguish or bar the demand by proving the signature of the seaman to a paper acknowledging payment. The order entered on the first hearing in respect to wages only, is therefore affirmed. But on a more critical consideration of the testimony and the answer of the respondent, I am inclined to think the former order rejecting the claim for short allowance ought to be modified. The technical objection that the libel did not sufficiently specify his claim for short allowance, had its weight in that decision; yet perhaps in the exceeding looseness and inapplicability of the pleadings on both sides (for neither libel or answer make any issue upon the facts of the second or continued voyage). the court ought not to turn the cause back to procure from the parties a more apt and complete frame of pleadings. This objection was made on the final argument. and was not brought forward to shut out the testimony to that point. So in respect to all the transactions on the voyage from Hamburgh to Buenos Ayres, each party went into full proofs, notwithstanding there were no averments in the libel or answer to which the evidence was applicable. There is the more justification in letting evidence to this claim to compensation, because of short allowance, come in under a very general form of pleading. because a recompense for short allowance is given a seaman in the way of increased wages. Act July 20, 1790 [1 Stat. 131]. And particularly in this instance the court would be disinclined to favor severe strictness of practice, since an entire forfeiture of wages is made a substantive part of the defence. One of the witnesses testifies that the crew were on exceedingly short allowance for forty or fifty days, and the witness called by the respondent admits the allowance was very scanty for a considerable period between Pernambuco and Hamburgh.

No evidence is given of the quantity of provisions supplied the vessel for the voyage. This proof should be furnished by the ship, when the fact that the crew were put on short allowance is proved. But as the demand in this instance is a stale one, I think it was no more than reasonable that the libellant was required to give evidence importing that the ship was insufficiently provisioned. This was done, and then clearly the burden of proof is upon the ship to show by clear evidence that she had placed on board all the provisions required by law. This justification has not been made by the respondent, and I shall accordingly allow forty days extra wages to the libellant therefor, at the rate of ten dollars per month, being thirteen dollars and thirty-three cents.

The remaining and most litigated point between the parties relates to the alleged desertion of the libellant at Buenos Ayres. It was decided, upon the first hearing of the case, that the absence of the libellant from the ship at Buenos Ayres did not amount to a desertion which forfeited the wages due to him, particularly so if the defence of desertion was placed by the respondent on the contract of the libellant in the shipping articles, because the voyage to Buenos Ayres was palpably not embraced in that contract, but was a deviation from it, and the libellant was not bound by the articles to perform it.

The defence, accordingly, was to be governed by the character of the agreement made by the libellant at Hamburgh. That was a parol engagement on a different consideration, and for a voyage not contemplated in the original articles. After so long a period, it is difficult to find clear evidence of the circumstances connected with the transactions of that voyage, and the absence of the libellant from the ship; and I was disposed to regard his leaving the vessel the result of timidity and dread of the dangers of returning to her in a small boat in the night time, and not a wilful desertion, and to hold the blame of his continued absence to be mutual between him and the master. But upon further reflection, I am convinced that view was incorrect, upon the facts and circumstances of the case, and that even if his leaving the boat for that night might be attributable to alarm at the perils of rowing her out to the vessel, still there is nothing to excuse the libellant in concealing himself on shore, and continuing his absence from the vessel until her departure from Buenos Ayres. The vessel remained seven or eight days longer at that port; and it is proved that the master inquired where the libellant could be found. This was all that should be required of him in discharge of his duty; and there was ample time for the libellant to have returned to his service on board, had he desired to do so. The lodgings of the master on shore were well known to him, where he could have reported himself at once. It must be presumed he avoided doing either, because he intended to abandon the vessel. It appears, from the testimony, that he had previously contemplated leaving her at Buenos Ayres, and endeavored to persuade some of his shipmates to join him, assuring them that they could obtain very high wages at that port; and whether the expectation of such increased remuneration induced him to disregard his wages in arrear, or whether motives of resentment, pique or personal fear actuated him, I feel bound to hold that he voluntarily left the vessel at Buenos Ayres without leave, and without intending to return to her. Such abandonment of the ship is a desertion which works a forfeiture of the wages then due him on that voyage (3 Kent, Comm. 198), whether his agreement was by regular shipping articles or verbal. Desertion incurs a forfeiture of wages. without the aid of stipulations in shipping articles: and the argument that the engagements in those articles do not em-

brace this voyage, is of no avail against this defence. It is valid and efficient, whether the shipping contract is verbal or written. It, therefore, matters not on this evidence whether the libellant was sailing under his shipping articles or a new and verbal contract. Had the libellant refused to proceed on this voyage, because it was one not designated by the articles, he could not be charged with desertion. The Eliza, 1 Hagg. Adm. 182, 184; The Minerva, Id. 347. But the new contract was obligatory upon him, and he is responsible for its violation. Having broken it by wilful abandonment of the vessel, without intending to return to her, he forfeits all wages earned during its continuance. This forfeiture does not retro-act and include the wages earned on the outward voyage to Hamburgh. That voyage terminated there by the new arrangement between the master and libellant for the present one.

I accordingly decree that the libellant receive for eight months' service on board the vessel, up to the close of the voyage at Hamburgh, eighty dollars, and for short allowance during that period, thirteen $33/100$ dollars, being, in the whole, ninety-three dollars thirty-three cents, deducting therefrom the advance of twelve dollars, and nine dollars paid at that port, and his costs to be taxed; and that the libellant's wages, earned on the subsequent voyage from Hamburgh to Buenos Ayres, be deemed forfeited for desertion at the latter port.